## MARYLAND-NATIONAL CAPITAL PARK AND PLANNING COMMISSION *v.* ROSSMOOR CORPORATION ET AL.

[No. 284, September Term, 1971.]

*Decided April 6, 1972.*

The cause was argued before HAMMOND, C. J., and FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Sanford E. Wool,* with whom was *Robert H. Levan* on the brief, for appellant.

*David Macdonald,* with whom was *David E. Manoogian* on the brief, for Rossmoor Corp. and Rossmoor Construction Corp., part of appellees. *H. Christopher Malone, As-*

*sistant County Attorney,* with whom were *Richard S. McKernon, Acting County Attorney,* and *Alfred H. Carter, Deputy County Attorney,* on the brief, for Montgomery County, other appellee.

HAMMOND, C. J., delivered the opinion of the Court.

Montgomery County in 1964 established a "Planned Retirement Community" zoning classification (PRC), Montgomery County Code (1965) § 111-17 (the zoning ordinance) to authorize "a planned retirement community type development, within [a tract] of land containing not less than seven hundred fifty acres, for residents aged fifty-two years and over, and providing within [the tract] all of the recreational, medical, retail, commercial and similar services required by the residents thereof in accordance with a comprehensive site development plan approved by the county planning board." Soon after the PRC zone was adopted, the District Council granted Rossmoor Corporation, an appellee, a reclassification to that zone for 920 acres it owned in Montgomery County.[1]

Rossmoor's application to the District Council for PRC zoning was accompanied by a site development plan bearing the recommendation of the planning board (in this instance approval) as § 111-17(c) specifically requires.

In 1969 §§ 111-17(b)(2) and 111-17(b)(9) of the zoning ordinance were amended to allow parts of a PRC tract to be developed for use by those who had not reached a specified venerable age. Rossmoor desired to take advantage of this new development opportunity. Section 111-17(d)(4) entitled "Effect of Site Development Plan", reads:

"Building permits shall be issued only in ac-

---

1. Rossmoor is the only entity that has been granted PRC zoning from 1964 to date. The District Council is the Montgomery County Council sitting as the District Council for zoning purposes for that part of the Maryland Washington Regional District which is within Montgomery County.

cordance with the approved site development plan, and all construction and development shall be as shown on the plan. Any departure from the plan shall be cause for revocation of a building permit or denial of a use and occupancy permit. Any proposed changes in the plan shall be resubmitted to the planning board for its recommendation."

To meet the requirement spelled out in the last sentence of § 111-17(d) (4) Rossmoor submitted to the planning board an amended site development plan which divided the tract into areas in which only the statutorily aged could live and areas in which young or old could live. On September 10, 1970 the planning board recommended approval of the amended development plan. The District Council was informed of the approving recommendatory action of the planning board, taken pursuant to § 111-17(d) (4) of the zoning ordinance, but took no action. On June 24, 1971 Rossmoor submitted to the planning board a proposed amendment to the approved 1970 site development plan to increase the number of age-unrestricted dwelling units to 2905 from the 1900 units shown on the 1970 plan and a total of 4357 age-restricted units. The 1971 proposed plan utilized the maximum density permitted by the text of the PRC zoning ordinance.

The Board became uncertain as to its power to act and as to the intent and meaning of the provisions in the ordinance relating to the amendment of a PRC site plan, including the answer to the question whether the approval of the District Council was required in case of such an amendment. It sought the advice of its counsel. We quote his reply in part because it comprehensively, soundly and logically points up the questions and problems at issue:

"The P-R-C Zone is structured so that a comprehensive Site Development Plan is reviewed by the Planning Board prior to and in connection with the granting of the zone by the District

Council. The zone is granted 'in accordance with' (Section 111-17, p. 86) the Site Development Plan. All subsequent building must then be in accordance with said plan.

"Unlike three other zones which are of a similar nature, the P-R-C Zone contains no procedure for amendment of a Site Development Plan once approved. Nor is there within the text of the P-R-C Zone any authority upon which the Planning Board may amend the Site Development Plan subsequent to the grant of zoning. The zoning, granted on the basis of the approved Site Development Plan, locks the developer in to his approved Site Development Plan. Three other zones have a development plan procedure prior to zoning similar to that which is provided for by the P-R-C Zone. These are the ROCBD (Section 111-17B), the Town Sector Zone (Section 111-25) and the Planned Neighborhood Zone (Section 111-26) [and in these cases the ordinance requires the District Council to approve a proposed change].

"The only reference which could be construed to indicate some amendment procedure in the P-R-C Zone is found in Section 111-17d(4) which states:

'Any proposed changes in the plan shall be resubmitted to the Planning Board for its recommendation.'

There is no indication to whom such recommendation is to be made. Although it would logically be made to the District Council, the Planning Board would be ill-advised to make a recommendation of approval of a Site Development Plan when the developer could then contend that since no referral to the District Council is required by the P-R-C Zone the only approval necessary is that of the Planning Board. As the

grant of the P-R-C zoning is integrally related to the approved Site Development Plan, a change in the Site Development Plan may well amount to a change in the densities upon which the District Council relied in granting the zoning. The important relationship between the comprehensive Site Development Plan and the grant of zoning is illustrated by the fact that the other three similar zones require that substantial changes in the Site Development Plan be approved by the District Council. Given the fact that the P-R-C Zone contains no full procedure for amendment to the Site Development Plan, this sentence in the Zoning Ordinance could be construed to apply to the procedure for approval of the Site Development Plan prior to the grant of zoning by the District Council. That is, any changes made in the plan subsequent to its approval by the Planning Board but prior to final action by the District Council on Zoning must be resubmitted to the Planning Board for its recommendation.

\* \* \*

"It is therefore the conclusion of the Legal Department that the applicant, Rossmoor Leisure World, may not seek to have the Planning Board approve a change in its Site Development Plan when there is no procedure or authority for the Planning Board to so act under the P-R-C Zone. The applicant must seek relief from the legislature, being the District Council. Should the District Council, upon advice from the Office of the County Attorney, conclude that it does presently possess authority to consider a change in the Site Development Plan, it may then request a recommendation regarding such from the Planning Board. Otherwise, in order to permit the amendment of a Site Development Plan for a P-R-C Zone, it is neces-

sary that a text amendment be introduced and enacted."

In passing we note that beyond the literal meaning of the words used, one can only speculate as to the true intent and meaning of the sentence in § 111-17(d)(4) of the Montgomery County Zoning Ordinance reading: "Any proposed changes in the [Site] plan shall be resubmitted to the Planning Board for its recommendation." To decide that it meant only changes before the District Council acted might be a reasonable guess but it would be only a guess. To decide that it included changes after initial District Council approval and that accordingly new action of the District Council would be required to rezone to the proposed change, would be consistent with the general approach of the ordinance and the respective powers, duties and functions of the planning board and the District Council, but the words of the ordinance do not reasonably permit that reading. It is conceivable that the changes contemplated by the last sentence of § 111-17(d)(4) are only changes in form, such as the relocation of buildings vis-a-vis open spaces or roads, all within the substantive bounds of the PRC zone, as limited by the original approved site plan that was made part of the zoning granted by the District Council. The only thing clear is that the sentence requires proposed changes in the site plan to be submitted to the planning board for its consideration and the board to make its recommendation as to the proposed changes. To whom the recommendation is to be made is not stated and although the effect of the recommendation is not spelled out, it would seem that it can not be made to be more than it is specifically said to be —a recommendation.

We think the lower court did not err when it directed the board to follow the literal command of § 111-17(d)(4) and make a recommendation as to a proposed site plan. We will affirm the following part of the decree appealed from:

"pursuant to said section 111-17d of said Zoning Ordinance, the Montgomery County Planning Board has the power and duty to review and act upon revisions of a Site Development Plan for which application is duly made pursuant to said section * * *."

We will modify the part of the decree reading:

"pursuant to the Court's authority to issue a mandatory injunction under subtitle BB of the Maryland Rules of Procedure, the Court hereby orders that on or before September 3, 1971, the Montgomery County Planning Board shall review, act upon, and approve or disapprove the Site Development Plan which is the subject of the application made by plaintiff on June 24, 1971 * * *"

to read:

"The Court hereby orders that on or before September 3, 1971 the Planning Board shall recommend approval or disapproval of the Site Development Plan which is the subject of the application made by plaintiff on June 24, 1971,"

and as modified, we will affirm.

We reverse the part of the decree reading:

"and further, if said Planning Board finds that said Site Development Plan is in compliance with the provisions of said Zoning Ordinance, it shall approve said Plan, and if the Board finds that said Plan is not in compliance with the provisions of said Zoning Ordinance, it shall disapprove said Plan * * *"

and the part reading:

"upon such approval or disapproval as above provided, the Board shall notify the applicant (the plaintiff) and the District Council, in writ-

ing, of said action, as provided in Section 111-17d(3) of said Ordinance * * *."

We find no substance to appellant's arguments on procedure and the sufficiency of the evidence. Matters will not hang on dead-center as a result of the action of the lower court and our partial affirmance and partial reversal. We were told at the argument that Rossmoor has gone to court to seek reversal of the planning board's adverse recommendation and to get a judicial green light to implement its proposed new site plan, and that there has been submitted a proposed text amendment to require Council approval of a revised site plan. Either judicially or legislatively, or perhaps in combination, Rossmoor will learn definitively how many people it can house on its tract of land.

> *Decree affirmed in part and reversed in part, costs to be paid by Rossmoor and Montgomery County.*